**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSE NEGRETE, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 19-18480 (GC) (DEA) |
| | : | |
| v. | : | |
| | : | |
| STATE OF NEW JERSEY, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**CASTNER, District Judge**

I.   **INTRODUCTION**

Plaintiff, Jose Negrete ("Plaintiff" or "Negrete"), is a state prisoner at the New Jersey State

Prison ("NJSP") in Trenton New Jersey.  He is proceeding *pro se* with an Amended Complaint.

(*See* Am. Compl., ECF 1 at 7-21).  Presently pending before the Court is Defendants' the State of

New Jersey, the New Jersey Department of Corrections (hereinafter the "NJDOC"), Bruce Davis,

Craig Sears, Victor M. Lee and Jamal El-Chebli (collectively the "Defendants") Motion for

Summary Judgment.  (*See* ECF 26).  For the following reasons, Defendants' Motion for Summary

Judgment is granted in part and denied in part.  Defendants are entitled to summary judgment on

Plaintiff's First Amendment free exercise claim related to the classes and programs offered at

NJSP.  Plaintiff's Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.

§ 2000cc-1 *et seq.*, however, shall be permitted to proceed against all Defendants as will his First

Amendment retaliation claim and free exercise claim as to his inability to access a copy of the

Quran  against  Defendants  Davis,  Sears,  Lee  and  El-Chebli  (hereinafter  the  "Individual

Defendants"). Plaintiff's other First Amendment claims against the State of New Jersey and the NJDOC are dismissed with prejudice for failure to state a claim.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was (and remains) incarcerated at NJSP during the period giving rise to the action in this case. (*See* Defs.' Statement of Material Facts Not in Dispute, ECF 26-2 ¶ 2). In addition to suing the State of New Jersey and the NJDOC, as indicated above, Plaintiff also names the following individuals as Defendants:

1. Victor Lee – State Coordinator for the Office of Chaplaincy Services (*see id.* ¶ 2);

2. Jamal El-Chebli – Iman and Chaplain Supervisor at NJSP (*see id.* ¶ 3);

3. Bruce Davis – Administrator of NJSP (*see id.* ¶ 4); and

4. Craig Sears – Major at NJSP (*see id.* ¶ 5)

Plaintiff sues the Defendants for purportedly violating his religious rights and freedoms under RLUIPA, 42 U.S.C. § 2000cc-1 *et seq.* Plaintiff also sues the Defendants under 42 U.S.C. § 1983 for violating his free exercise rights and right to be free from retaliation under the First Amendment.

The case mainly arises from Plaintiff's ongoing dispute with the types of Islamic religious classes and programs that are offered at NJSP and the subsequent actions by the Defendants in response to his complaints. Plaintiff is a practicing Muslim (*see* ECF 1 at 8) and seeks to have his sect, As-Salafiyah, recognized as its own Islamic denomination within NJSP. (*See* ECF 26-2 ¶¶ 12-13). While NJSP offers inmates classes with respect to Islam, Plaintiff states that the classes offered are insufficient with respect to how he wishes to practice his faith. (*See id.* ¶¶ 17-20). According to Plaintiff, the non-denominational Islamic classes offered at NJSP, led by Defendant El-Chebli, are offensive based on his Islamic orthodoxy because "it's considered a sin. We're not

allowed to sit with bida [sic]. We're not allowed to sit with people of innovation. That's one of the fundamentals in our religion." (*See* ECF 26-2 ¶ 20). Plaintiff seeks to have practicing members of his orthodox faith separated and be permitted to have their own community within NJSP, including a separate Jumua'ah (Friday Islamic prayer service). (*See id.* ¶ 21).

Defendant El-Chebli and Plaintiff have clashed during the Islamic classes taught by El-Chebli. (*See id.* ¶ 22). More specifically, Plaintiff "does not want Iman El-Chebli to lead the classes or give any input while overseeing the class as [Plaintiff] does not consider him [ ]part of his affiliated denomination." (*See id.* ¶ 23). Plaintiff claims based on his own religious creed and principles, he is not allowed to sit and learn by El-Chebli. (*See id.* ¶ 24).

As an inmate at NJSP, Plaintiff is permitted to read/and or have access to the Quran (with one period disputed by the parties discussed *infra*), attend Jumua'ah prayer services, fast during the Islamic holy month of Ramadan and pray five times daily. (*See id.* ¶ 8). In Islamic classes that are offered at NJSP, Plaintiff can also access books and CDs from relevant Islamic scholars in Plaintiff's Islamic orthodox sect. (*See id.* ¶ 10).

On or about June 11, 2019, Plaintiff spoke with Defendant El-Chebli whereby Plaintiff requested to lead classes and have Defendant El-Chebli sit quietly and not interrupt Plaintiff's teachings. (*See id.* ¶¶ 25-26). Plaintiff called Defendant El-Chebli a "deviant" at this meeting and that he knew Defendant El-Chebli's family well. (*See id.* ¶ 35).

Defendants maintain NJSP has a policy of prohibiting inmates from leading organized activities due to safety concerns. (*See* Decl. Lee, ECF 26-3 at 35-36). More specifically, Defendant Lee – State Coordinator for Chaplaincy Services - states as follows:

> [t]he safety of the staff and inmates hinges on the ability of correctional staff to maintain control over the institution. If inmates are permitted by the [Department of Corrections] to assume a leadership role, they are tacitly placed in a position of control over

3

> other inmates.  Abdicating this role to the inmates places the security
> of the prison in jeopardy as inmates can be persuaded to follow the
> inmate leader, rather than correctional staff and institutional rule
> regulations.  [¶]  The prohibition of inmates assuming control over
> other inmates in formalized gatherings through leadership positions
> is also consistent with the legitimate penological objective to
> prevent inmates from becoming catalysts to violence, disorder and
> escape.

(ECF 26-3 at 35-36).  Defendants include in the record the Internal Management Procedure for

Islamic inmates which states as follows: "[a]n Imam must be permitted to conduct the prayers and

worship service and to attend to the religious needs of the Muslim inmates.  In the absence of an

Islamic chaplain an approved volunteer or staff member will supervise the service." (*See* ECF 26-

3 at 26).  The policy also states that Muslim inmates must be permitted to have or be given access

to the Quran. (*See* ECF 26-3 at 24).

Plaintiff challenges the application of NJSP's policy by arguing that inmates are permitted

to represent other inmates at NJSP different from his religious sect.  He alludes to unit

representatives and paralegals who represent inmates at disciplinary proceedings as well as at

NAACP, Native American and Odinist membership meetings.  According to Plaintiff, only

members of his religious sect are not permitted to have a "study group." (*See* ECF 36 at 7).  Indeed,

Plaintiff testified as follows at his deposition:

> You got Native American go out there and smoke cigars with a
> lighter and a match.  And that's not a security threat.  [¶]  But me,
> studying my religion is a security threat?  You got them guys, they
> don't have nobody out there.  They go out there.  They pray.  You
> got them other guys, them – the Odinists, right, them Odinist people,
> they worship things.  Right.  They don't have nobody up there
> dictating what they believe in.  The Jews, they don't have nobody
> dictating to them . . . .
>
> We have – again, we have tier reps, right, inmates represent over a
> hundred people.  We have teachers.  We have – every religion got
> their guys that teach religion . . . .

4

Inmates – like I said, you have Native – you think Native American got somebody that come in here and run their service? They don't. The Odinists, them – them guys, they don't have nobody. There's no Odinist chaplain. Them guys go up there and they reach their own thing.

So again, what they telling you is absolutely not true. Other religions don't have their volunteers. Some don't have nobody but themselves. And they run their own services. . . .

Odinists, inmates doing it. The Native America inmates doing it. . .

.

So, you know, you can't tell me that we're not being treated differently.

(Pl.'s Dep., ECF 38-1 at 74-75, 77-78). Defendants claim though that an approved volunteer can supervise religious services or classes, but that Plaintiff has failed to even seek out such possibilities with respect to his Islamic sect.

On or about June 13, 2019, officers came to Plaintiff's cell, subjected Plaintiff to a strip search and took his religious materials, books and literature. (*See* ECF 1 at 14; ECF 26-2 ¶ 36). Plaintiff alleges that Defendant Sears told him at the time that the search occurred because he threatened Defendant El-Chebli (at their June 11, 2019 meeting). (*See* ECF 26-2 ¶ 37).

For a period thereafter, Plaintiff was placed in administrative segregated housing and his personal belongings were locked in his regular cell. (*See* ECF 26-2 ¶ 41). Plaintiff asserts that Defendants denied many requests by him to have a copy of the Quran while he was in administrative segregated housing. (*See* ECF 1 at 16). Plaintiff states that he was without a copy of the Quran for over three months. (*See* ECF 36 at 4).

On July 2, 2019, Plaintiff received a disciplinary charge for threatening another with bodily harm or with any offense against him and his person related to what he told Defendant El-Chebli at their June 11, 2019 meeting. (*See* Decl. El-Chebli, ECF 26-3 at 40). The disciplinary hearing

officer ultimately found Plaintiff guilty of threatening Defendant El-Chebli. (*See* ECF 26-2 ¶ 47). However, the New Jersey Superior Court, Appellate Division, reversed this finding on appeal. (*See id.* ¶ 47). In reversing the disciplinary hearing officer's guilty finding, the Appellate Division held as follows:

> [t]he hearing officer identified two remarks by Negrete as the basis for the threat charge: (1) Negrete calling the Imam a deviant; and (2) Negrete informing the Imam that he was aware of the Imam's outside activities. The record at the disciplinary hearing does not support a finding that either of those remarks objectively conveyed a threat against the Imam, his family, or his property.

> Negrete's remarks must be considered in context. *See Figueroa* [*v. N.J. Dep't of Corr.*, 997 A.2d 1088, 1090-91,] 414 N.J. Super. [186,] [ ] 191 [(N.J. Sup. Ct. App. Div. 2010)]. For several years, Negrete had expressed both to the Imam and to other DOC officials that he had religious views that differed from the Imam's. In that regard, Negrete retained First Amendment rights that could be limited only by "legitimate penological objectives of the corrections system." *Jones v. N.C. Prisoners Lab. Union*, 433 U.S. 119, 129 (1977); *In re Inmate Mail to Att'ys,* 120 N.J. 137, 147 (1990). Accordingly, Negrete's use of the term "deviant" – by itself – did not establish a threat because it was made in the context of an ongoing dispute over different views of Islam.

> The record also lacks sufficient support to infer a physical threat from Negrete's reference to the Imam's outside activities. Negrete referred to those activities in response to the Imam's question of why he was being called a deviant. Negrete responded by stating that he had a brochure in his cell discussing an Islamic conference and that Negrete did not share the same beliefs as the religious figures who had spoken at that conference.

> In summary, there is not sufficient evidence in the record to support a finding that the remarks made by Negrete to the Imam objectively conveyed a threat of harm. Moreover, the DOC failed to consider Negrete's legitimate First Amendment rights.

*Negrete v. New Jersey Dep't of Corr.,* No. A-0089-19, 2021 WL 1997930, at *3 (N.J. Super. Ct. App. Div. May 19, 2021)

Plaintiff initiated this action in state court. Plaintiff states he gave a copy of his original complaint to a housing unit officer the same day Defendants purportedly conspired to place him in administrative segregation.[1]  (*See* ECF 26-3 at 14).  It remains unclear when this purportedly transpired.  Nevertheless, the record includes a document dated June 28, 2019, whereby Plaintiff sought the waiver of filing fees from the New Jersey state courts. (*See* ECF 1 at 23).  This occurred only a few days before Plaintiff received his disciplinary charge.

At some point thereafter, Plaintiff submitted the operative pleading in this case, Plaintiff's Amended Complaint, to the New Jersey Superior Court, Law Division.  The Amended Complaint is dated August 8, 2019.  (*See id.* at 18).  Plaintiff seeks monetary damages against the Defendants as well as injunctive relief ordering Defendants to offer classes relevant to his Islamic orthodoxy.

Plaintiff seeks relief from the Defendants under RLUIPA and the First Amendment. Plaintiff's First Amendment claims can be separated into two separate categories: (1) free exercise; and (2) retaliation.  With respect to Plaintiff's free exercise claim, this Court construes this claim as raising two sub-issues; more specifically: (1) Plaintiff complains about an infringement of his free exercise rights as to NJSP's actions related to the limits it has placed on the classes Plaintiff seeks with respect to his orthodox Islamic faith; and (2) Plaintiff's inability to access a Quran while in administrative segregated housing.

In September 2019, Defendants removed Plaintiff's state court Amended Complaint to federal court.     (*See* ECF 1).   In October 2019, Defendants filed an Answer to the Amended Complaint.  (*See* ECF 4).  After discovery ended (which included Defendants taking Plaintiff's deposition), Defendants filed their pending Motion for Summary Judgment.   (*See* ECF 26).

---

[1] Plaintiff's "original" complaint (to the extent one *may* exist) referenced in his Amended Complaint was not included in the Notice of Removal nor in the exhibits attached to both parties' briefs.

Defendants make several arguments in their Motion; more specifically, Defendants argue as follows:

1. Defendants are entitled to summary judgment on Plaintiff's RLUIPA claims because: (1) Plaintiff's religious beliefs are not substantially burdened because he is not barred from exercising his religion as Plaintiff has several avenues available to practice his religious beliefs; and (2) even if Plaintiff has shown a substantial burden under RLUIPA, there is no less restrictive means of furthering the interest;

2. Defendants are entitled to summary judgment on Plaintiff's First Amendment free exercise claim because the Islamic class restrictions were sufficiently reasonable;

3. Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff fails to establish a causal link between protected constitutional activity and an adverse action;

4. Defendants are entitled to summary judgment on Plaintiff's claims based on qualified immunity; and

5. Plaintiff is not entitled to punitive or compensatory damages.

Plaintiff subsequently responded in opposition to Defendants' Motion. (*See* ECF 32 & 36). Defendants filed a Reply in support of their Motion for Summary Judgment. (*See* ECF 33).

## III.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV.    DISCUSSION

### A.  Islamic Classes/Programs

i.    *RLUIPA*

Plaintiff argues Defendants violated RLUIPA by not permitting him to conduct classes in support of his orthodox Islamic faith as opposed to the non-denominational Islamic class that is offered at NJSP led by Defendant El-Chebli. RLUIPA "provide[s] very broad protection for religious liberty. *See Holt v. Hobbs*, 574 U.S. 352, 356, 135 S. Ct. 853, 859 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)). RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government can satisfy strict scrutiny. *See* 42 U.S.C. § 2000cc-1(a). This requires a showing that the burden imposed on a person's religious exercise "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Under RLUIPA's burden shifting framework, a plaintiff must first show that the defendant has placed a substantial burden on the plaintiff's sincerely held religious belief. *See Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007); *see also Abdul-Aziz v. Lanigan*, No. 17-2806, 2020 WL 3287229, at *11 (D.N.J. June 18, 2020) (setting forth what Plaintiff must initially show under RLUIPA's burden shifting framework). In *Washington*, the Third Circuit noted that:

> [f]or the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

497 F.3d at 280 (footnote omitted); *see also Shelley*, 832 F. App'x at 105.  Nevertheless,

> [t]he Supreme Court has explained, however, that the question of whether an authentic religious belief has been substantially burdened under RLUIPA does not permit consideration of whether the plaintiff may still exercise his religious beliefs in other ways. *See Holt*, 135 S. Ct. at 862.  "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* (parenthetical omitted).

*Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 542 (D.N.J. 2019).

Where a plaintiff shows that a policy or practice substantially burdens a sincerely held religious belief, the burden shifts to defendants to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so.  *See Holt*, 574 U.S. at 362.  Religious accommodations though do not override other significant interests in maintaining order and safety.  Indeed, as the Supreme Court has noted in citing to the relevant legislative history of RLUIPA, lawmakers anticipated that courts would apply the act with deference to prison administrators "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (citing to legislative history of RLUIPA); *see also Watson v. Christo*, 837 F. App'x 877, 882-83 (3d Cir. 2020); *Cole v. Danberg*, No. 10–88, 2015 WL 5437083, at *5 (D. Del. Sept. 14, 2015) ("The drafters of RLUIPA were mindful that discipline, order and security are urgent in penal institutions, and they therefore anticipated that courts would apply the RLUIPA test 'with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.").  Nonetheless:

11

> RLUIPA, however, does not permit unquestioning deference. *Holt*,
> 135 S. Ct. at 864. It is the obligation of the courts to consider
> whether exceptions are required under the test that requires the
> defendants not merely to explain why they took the actions they did,
> but to prove that their actions are the least restrictive means of
> furthering a compelling governmental interest. *See id.* As observed
> by the Supreme Court in *Holt*, "[p]rison officials are experts in
> running prisons and evaluating the likely effects of altering prison
> rules, and courts should respect that expertise. But that respect does
> not justify the abdication of the responsibility, conferred by
> Congress, to apply RLUIPA's rigorous standard." *Id.*

*Cole*, 2015 WL 5437083, at *5.

RLUIPA provides greater protections of a prisoner's religious liberty than the First Amendment free exercise clause. *See Shelley v. Metzger*, 832 F. App'x 102, 105 (3d Cir. 2020). By way of example only, while alternative means of practicing one's religion are relevant under the applicable First Amendment free exercise test described *infra*, they are not under RLUIPA's "substantial burden" analysis. *See Walker v. Baldwin*, No. 19-50233, 2022 WL 2356430, at *5 n.5 (N.D. Ill. June 30, 2022) (citing *Holt*, 574 U.S. at 361-62).

Defendants argue Plaintiff is not entitled to relief under RLUIPA because they have not substantially burdened his sincerely held religious beliefs. In support, Defendants note that Plaintiff has access to the Quran, can attend Friday prayer services, can fast during Ramadan, can pray five times daily and that he thereby has the same rights as other Islamic inmates. (*See* ECF 26-1 at 12). Furthermore, Plaintiff is offered access to teachings from books and compact discs from scholars within his orthodox Islamic faith at meetings. Defendants further note that NJSP's policy permits Plaintiff to attend classes related to his Islamic orthodox sect if he sought out and obtained an outside volunteer to come and teach the class, something that Plaintiff has apparently not even attempted to do based on this record.

While many of Defendants' arguments cited above are certainly relevant to Plaintiff's free exercise claim under the First Amendment, such arguments related to the alternative means

Plaintiff can practice his religion have little to no force with respect to Plaintiff's RLUIPA claim. *See, e.g., Brown v. Page*, No. 20-70, 2021 WL 288754, at *3 (citing *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Holt*, 574 U.S. at 361-62))) (noting that the availability of alternative means of practicing one's faith "does not play into" RLUIPA analysis). This Court rejects Defendants' arguments related to other avenues Plaintiff may have to practice his religious beliefs as a reason to award them summary judgment on Plaintiff's RLUIPA claim.

Defendants' strongest argument is that their policies advance the prison's compelling interest in order and safety. This Court though finds, for the reasons described below, that there remain genuine issues of material fact on this issue as it relates to Plaintiff's RLUIPA claim.

Defendant Lee states in his declaration that NJSP's policy of prohibiting inmates from leading organized activities is designed to protect the safety and security of the institution. Indeed, post-*Holt* "courts have recognized that prison officials have legitimate interests in preventing unsupervised religious group activities, and in preventing inmates from holding leadership roles within a religious group, in order to maintain security and discipline within the prison." *Heikkila v. Kelley*, No. 16-299, 2018 WL 4610141, at *13 (E.D. Ark. Aug. 27, 2018) (citing *Kemp v. Liebel*, 877 F.3d 346, 353–54 (7th Cir. 2017) (other citations omitted), *report and recommendation adopted by*, 2018 WL 4610625 (E.D. Ark. Sept. 25, 2018), *aff'd as modified*, 776 F. App'x 927 (8th Cir. 2019). However, "[d]efendants may not rely upon a prison policy when they fail to apply it in a uniform and consistent manner." *Utt v. Brown*, No. 12-3132, 2015 WL 5714885, at *11 (E.D.N.C. Sept. 29, 2015) (citing *Holt*, 135 S. Ct. at 864) (other citations omitted). In *Utt*, the Eastern District of North Carolina denied defendants' motion for summary judgment on plaintiff's RLUIPA claim noting in part that the prison's policy of requiring outside volunteers was being applied inequitably because only the Wicca faith was subject to the policy. *See id.* Similarly, in

this case, Plaintiff states in his sworn deposition testimony that other groups, including religious groups such as Odinists[2], have meetings where an outside volunteer is not required, as compared to what NJSP is requiring of Plaintiff's faith. This factual dispute about how NJSP treats other religious groups remains outstanding based on this record.

Nevertheless, the fact that NJSP potentially treats a particular group differently than other groups may not necessarily be dispositive of Defendants' Motion for Summary Judgment on Plaintiff's RLUIPA claim. For example, in *McGee v. O'Brien*, 160 F. Supp. 3d 407, 416 (D. Mass. 2016), the plaintiff noted inmates in other religious groups were permitted to meet without the need for an outside volunteer to be present. *See* 160 F. Supp. 3d at 416-17. However, the District of Massachusetts determined that there were additional particular security concerns related to McGee's religious group that placed it in a different light because of the group's materials that espoused violence and killing. *See id.* at 417. Ultimately, in *McGee*, the court held as follows:

> Defendants have demonstrated that the DOC [department of corrections] has a compelling interest, namely, prison security and the avoidance of violence, in burdening Plaintiff's religious exercise. Deference is due to the DOC's expertise in the area of prison safety. *Hudson* [*v. Dennehy*], 538 F.Supp.2d [400,] [ ] 409. By requiring the presence of an NGE volunteer when conducting corporate worship so as to aid adherents in properly interpreting NGE texts and tenets in order to avoid inciting violence, Defendants have tailored the least restrictive means of furthering that interest. *Id.* at 410.

*McGee*, 160 F. Supp. 3d at 417.

Based on this record, however, this Court finds *McGee* distinguishable in this case. As potential evidence for treating Plaintiff's sect differently, Defendants rely on Defendant El-Chebli's declaration whereby he states that Plaintiff speaks and curses against all Muslims who do

---

[2] Some of the tenets of the Odinism can be found at *Gregory v. Pfister*, No. 18-387, 2019 WL 3287873, *1 (E.D. Ill. July 22, 2019)

not follow what he believes. (*See* ECF 26-3 at 39). However, this is different than in *McGee* where the District of Massachusetts noted that the *texts and tenets* of the religious faith espoused violence and killing. *See McGee*, 160 F. Supp. 3d at 419 (internal citation omitted) (noting that the DOC views the "texts as having the potential to create security threats if not properly interpreted, and therefore requires that NGE adherents' practice be under the supervision of an approved volunteer or done individually. This conclusion was reached after a thorough review of NGE's texts and tenets as well as consultation with the nationwide Prison Administrator for NGE and prison security experts. The potential for violence and security threats certainly would carry over to NGE adherents proselytizing to non-believers. After consideration, the DOC found no less restrictive way to address the particular security issues raised by the NGE religious materials.").

The record in this case remains unclear on material fact issues. Defendants are not entitled to summary judgment on Plaintiff's RLUIPA claim.

ii.     *First Amendment – Free Exercise*

Plaintiff next argues that NJSP's policies related to religious classes infringe on his First Amendment right to freely exercise his orthodox Islamic faith. The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. Amend. I. This constitutional right though is lessened in the prison context, where legitimate penological interests must be considered when assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Consequently, to establish a free exercise of religion claim under the First Amendment, a prisoner plaintiff "must show that the [defendants] burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests." *Heleva v. Kramer*, 330 F. App'x 406, 408 (3d Cir. 2009) (citing

*Turner*, 482 U.S. at 89). In general, if a prison regulation impinges on a prisoner's constitutional right to free exercise of his sincerely-held religious beliefs, the analysis turns to the four-factor test in *Turner*, 482 U.S. at 89, under which courts consider: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist. *See DeHart v. Horn*, 390 F.3d 262, 268 (3d Cir. 2004). "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Alexander v. Michigan,* No. 13-1372, 2017 WL 4334341, at *5 (W.D. Mich. Sept. 28, 2017) (citing *Turner* 482 U.S. at 90–91 (citing *Block v. Rutherford*, 468 U.S. 576, 587 (1984))). Furthermore, as previously noted, RLUIPA provides inmates with heightened religious protection when compared to their rights under the First Amendment's free exercise clause. *See, e.g., Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022) ("If a claim fails under the RLUIPA— which embeds a heightened standard for government restrictions of the free exercise of religion— it necessarily fails under the First Amendment."); *Shelley*, 832 F. App'x 105; *Smith v. Yuba Cty. Sheriff Dep't*, No. 19-1765, 2020 WL 4339472, at *6 (E.D. Cal. July 28, 2020) (noting lower threshold for showing a RLUIPA versus a First Amendment free exercise claim).

Defendants initially argue that *Turner*'s first factor weighs in their favor. More specifically, Defendants claim they offer non-denominational Islamic classes to prevent divisiveness and that because they permit an inmate to obtain an outside volunteer to oversee classes and worship services, it demonstrates that the policy meets a neutral governmental interest. (*See* ECF 26-1 at 18-19). This Court agrees this factor weighs in Defendants' favor. Indeed,

numerous federal courts have upheld restrictions on inmates leading other inmates in group religious services. *See Smith v. Kyler*, 295 F. App'x 479, 481-82 (3d Cir. 2008) (inmate's free exercise rights were not violated by DOC's policy to provide chaplains for only largest major faith groups and to prohibit group worship in absence of approved, volunteer faith group leader). *Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007) (stating that prison policy of prohibiting inmates from leading religious services without the assistance of a rabbi or approved outside volunteer was logically connected to penological concerns of security, staff, and space limitations); *Anderson v. Angelone*, 123 F.3d 1197, 1198–99 (9th Cir. 1997) ("Requiring an outside minister to lead religious activity among inmates undoubtedly contributes to prison security."); *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988) (finding constitutional a regulation prohibiting inmates from conducting their own religious services).

*Turner*'s second factor also weighs in favor of the Defendants. Plaintiff's main complaint is his inability to have separate orthodox Islamic classes/services at NJSP. NJSP has given Plaintiff an avenue to do so by seeking out an outside volunteer to lead such a class. There is nothing in the record that Plaintiff has made overtures to outside volunteers, nor has he made any showing that outside volunteers were unavailable to create a genuine issue of material fact that alternative means of Plaintiff's free exercise of his religion remained unavailable to him.

*Turner*'s third factor requires this Court to consider the impact the accommodation of a right would have on inmates, prison personnel and the allocation of prison resources. This factor weighs in favor of the Defendants. Indeed, as one court has noted:

> "[T]o change the prison's policy and allow services to continue in the absence of an imam would significantly impact prison resources and could affect prison security. Presumably, more prison guards would have to be deployed to oversee an inmate-led service given the types of conflicts that would likely arise." *McRoy* [*v. Cook Cty. Dep't of Corr.*], 366 F. Supp. 2d [662,] [ ] 679 [(N.D. Ill. 2005)]; *see*

17

> *also Hadi* [*v. Horn*], 830 F.2d [779,] [ ] 784–85 [(7th Cir. 1987)]
> (noting security risks associated with allowing inmates to hold
> positions of religious authority and recognizing potential for conflict
> if such an inmate is unable to resolve religious issues).

*Williams v. Dart*, No. 10-2499, 2011 WL 4808167, at *4 (N.D. Ill. Oct. 11, 2011); *see also*

*Williams v. Boughton*, No. 18-934, 2020 WL 4464509, at *11 (W.D. Wis. Aug. 4, 2020)

("Allowing inmates to serve as imams for Jumu'ah services or to facilitate Taleem study groups

would undermine the safety and security needs of the prison.").

    *Turner*'s fourth factor asks a Court to consider whether obvious, easier alternatives exist.

This Court also finds this factor weighs in favor of the Defendants.  Indeed, Plaintiff fails to show

an alternative to requiring outside volunteers to lead communal religious services and classes "that

fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."

*Williams*, 2011 WL 4808167, at *4 (quoting *Turner,* 482 U.S. at 91) (citing *McRoy,* 366 F. Supp.

2d at 677–79).

    After analyzing these relevant *Turner* factors, Defendants are entitled to summary

judgment on Plaintiff's First Amendment free exercise claim related to his complaints about

NJSP's Islamic religious classes/services.

### B. Quran unavailability while in administrative segregated housing

    This Court construes Plaintiff's Amended Complaint as also asserting claims with respect

to his free exercise rights under the First Amendment related to the purported denial of a copy of

the Quran while he was in administrative segregated housing for over three months.[3]  This issue

---

[3] RLUIPA only allows for injunctive relief. *See Small v. Wetzel,* 528 F. App'x 202, 208 (3d Cir. 2013) (citing *Sharp v. Johnson,* 669 F.3d 144, 154 (3d Cir. 2012)).  Given that Plaintiff does not assert that he is in administrative segregation or, perhaps more importantly, that he remains without access to a copy of the Quran in his present state of incarceration, any RLUIPA claim (as well as any claim for injunctive relief under 42 U.S.C. § 1983) related to the purported three-month period that Plaintiff was without a copy of a Quran while in administrative segregation is now moot. *See, e.g., Selby v. Caruso,* 734 F.3d 554, 561 (6th Cir. 2013) ( "[Plaintiff's] requests for declaratory and

was clearly expressed in Plaintiff's Amended Complaint. Furthermore, the topic was raised and discussed at Plaintiff's deposition. (*See* ECF 38-1 at 43). Finally, Plaintiff reiterated that he was also pursing claims related to the denial of access to the Quran in his response to Defendants' Motion for Summary Judgment. (*See* ECF 36-1 at 4 ("Plaintiff has submitted ample competent evidential material in this case to defeat summary judgment. For instance the denial of the Qu[ ]ran while in isolation[.]")). Defendants' Motion and Reply briefs in support of summary judgment fail to address this claim. Normally, that would end this Court's inquiry given the burden on Defendants at summary judgment. However, courts must screen complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(a). Indeed, section 1915A(b) directs district courts to *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b).

A review of the docket indicates this *sua sponte* screening was not completed, presumably because Defendants filed their Answer to the Amended Complaint approximately three weeks after removal. The fact that Defendants have now filed an answer as well as a dispositive motion in response to the Amended Complaint does not preclude this Court from screening the Amended Complaint pursuant to 28 U.S.C. § 1915A. *See Lair v. Purdy*, 84 F. App'x 413, 414 (5th Cir. 2003) (per curiam) (rejecting federal prisoner's argument that district court erred in using § 1915A to dismiss some of his claims after the defendants had already answered); *Rivera v. Zwiegle*, No. 13-3024, 2014 WL 6991954, at *1 n.1 (D.N.J. Dec. 9, 2014) (noting that the fact that defendants have

---

injunctive relief under RLUIPA became moot when he was released into the general prison population[.]"); *Reese v. Bouffard*, No. 14-244, 2015 WL 1947192, at *7 (D. Me. Apr. 29, 2015) ("Plaintiff cannot obtain injunctive relief because he has not alleged that he is presently subjected to disciplinary confinement that deprives him of access to his rosary beads or prayer oils).

filed an answer or dispositive motions does not prevent a court from screening under § 1915A); *Loving v. Lea,* No. 13–158, 2013 WL 3293655, at *1 (M.D. La. June 28, 2013) (citations omitted) ("A § 1915A dismissal may be made at any time, before or after service of process and before or after an answer is filed.")

"[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *See Courteau v. United States,* 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). Under *Ashcroft v. Iqbal,* "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The Amended Complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.,* 708 F.3d 470, 483 n. 17 (3d Cir.2012) (quoting *Iqbal,* 556 U.S. at 678).

Plaintiff brings his First Amendment claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

States and State entities are not "persons" subject to suit under 42 U.S.C. § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–71 (1989); *see also Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990) (explaining that *Will* established that "an entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983.").  As such, Defendants the State of New Jersey and the NJDOC are not "persons" amenable to suit under § 1983.  *See Pagliaroli v. New Jersey Dep't of Corr.*, No. 19-21505, 2020 WL 5077471, at *2 (D.N.J. Aug. 27, 2020).  Thus, Plaintiff's remaining First Amendment claims against the State of New Jersey and the NJDOC are dismissed with prejudice.

This Court finds though that the Individual Defendants are not entitled to dismissal of this free exercise claim.  Indeed, as one court recently noted:

> "denying prisoners access to their holy text . . . is a substantial burden on free-exercise rights." *Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017) (citing *Sutton v. Rasheed*, 323 F.3d 236, 253–57 (3d Cir. 2003) ("[W]hile we believe that a Christian inmate could practice his religion generally even if prevented from attending Christmas or Easter services, we do not believe he could practice his religion if deprived of access to the Bible.") and *Kay v. Bemis*, 500 F.3d 1214, 1229 (10th Cir. 2007)); *see also Blankenship v. Setzer*, 681 F. App'x 274, 277 (4th Cir. 2017) (holding 10-day deprivation of Bible during transport from state prison to county jail substantially burdened inmate's religion); *Tarpley [v. Allen Cty., Ind.*, 312 F.3d [895,] [ ] 899 [(7th Cir. 2002)] (observing that providing inmate a copy of the jail's Bible "offered him the essential material for his religious studies").

*Wells v. Hendrix*, No. 20-1065, 2022 WL 19415, at *9 (S.D. Ind. Jan. 3, 2022). Additionally, given the lack of any argument for summary judgment by the Individual Defendants on this claim, it shall proceed.

C. Retaliation

Plaintiff's final claim is that the Individual Defendants retaliated against him for exercising his constitutionally protected First Amendment rights. The Individual Defendants argue they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.[4] Plaintiff asserts Defendants conspired to retaliate against him the same day Plaintiff gave his original complaint to the housing officer for mailing to the court. (*See* ECF 1 at 15-16).

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

The Individual Defendants do not challenge the first two elements necessary for establishing a First Amendment retaliation claim. Indeed, filing suit constitutes constitutionally protected conduct. *See DeFranco v. Wolfe*, 387 F. App'x 147, 157 (3d Cir. 2010). Furthermore, placement in administrative segregated housing can constitute an adverse action. *See Turzanski v. Cty. of Burlington*, No. 15-8866, 2018 WL 5874073, at *8 (D.N.J. Nov. 9, 2018) (citing *Szemple v. Talbot*, 141 F. App'x 52, 54 (3d Cir. 2005)) (citing *Allah v. Seiverling*, 229 F.3d 220, 225–26 (3d Cir. 2000)) ("Because confinement to administrative segregation can constitute an adverse

---

[4] Plaintiff cannot proceed with any claims against the State of New Jersey or the NJDOC under § 1983 for First Amendment retaliation for similar reasons discussed in the previous section.

action, the Court finds that Plaintiff could plausibly satisfy the second element of a First Amendment retaliation claim").

Instead, the Individual Defendants argue there are no genuine issues of material facts outstanding with respect to whether Plaintiff has shown a "causal connection" to support his retaliation claim. To show a causal connection, a plaintiff must show that the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (citations omitted). Such causal connection facts usually fall into one of two categories; indeed:

> [t]o establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco*, 387 F. App'x at 154. While temporal proximity is relevant to retaliation, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

The Individual Defendants argue as follows:

> [t]he Court should find that the third factor [causal connection – of bringing a retaliation claim] weighs in favor of the Defendants as Plaintiff has failed to show a pattern of antagonism coupled with timing to establish a causal link. Here, Plaintiff identifies one meeting occurred with the Imam that resulted in allegedly adverse action. Even with identifying multiple instances in which he had disagreements with the Imam, Plaintiff presents no evidence that every time there was a disagreement or complaint filed, he

> subsequently received a disciplinary charge or had his cell searched.
> As such, [P]laintiff cannot prove retaliation.
>
> Further, Negrete had the opportunity to challenge the disciplinary
> charge. During the hearing, he confronted the Imam regarding the
> allegations. He even appealed the guilty finding and had it reversed
> on appeal.

(ECF 26-1 at 22-23 (internal citation omitted)). In their Reply, the Individual Defendants also assert that Plaintiff failed to show an unusual suggestive proximity between the protected activity and the alleged retaliatory action. (*See* ECF 33 at 8).

This Court finds that the Individual Defendants are not entitled to summary judgment on Plaintiff's retaliation claim. Plaintiff asserts that the adverse actions by the Individual Defendants began to occur at or around the time he submitted his *original* complaint for filing when he handed it to an officer for mailing. (*See* ECF 26-3 at 14). The Individual Defendants' Motion for Summary Judgment completely ignores the first avenue that Plaintiff can establish a causal link, namely, through an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action. What Plaintiff has set forth clearly falls within this first avenue to establish a causal link.

The Individual Defendants in their Reply argue that Plaintiff failed to show in his opposition an unusually suggestive proximity between the protected activity and the alleged retaliatory actions. However, this argument by the Individual Defendants turns the summary judgment standard on its head. It is up to the *Individual Defendants* who have the initial burden to show that there are no genuine issues of material fact. The record the Individual Defendants supplied this Court contains nothing to indicate when (and/or if) Plaintiff submitted an "original" complaint for filing in state court. The Individual Defendants in their notice of removal indicate that this action was initiated through Plaintiff filing his complaint in August 2019 – thereby

presuming that Plaintiff's Amended Complaint was the first filing. (*See* ECF 1 at 2-3). However, other documents filed by Plaintiff in state court are dated as early as June 2019. (*See* ECF 1 at 23). Furthermore, this Court has reviewed Plaintiff's entire deposition transcript and there is no testimony to resolve these remaining issues of fact as to when Plaintiff brought his initial state court complaint to a housing unit officer for filing. Thus, the record remains unclear as to when Plaintiff's purported constitutionally protected conduct occurred, such as attempting to file suit.

The Individual Defendants purportedly adverse actions in or around when Plaintiff attempted to file suit when he was placed in administrative segregated housing/filing of a disciplinary charge, *may* give rise to an "unusually suggestive time proximity." *See Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 134 (3d Cir. 2017) (noting that temporarily proximity inference is usually in the order of days or weeks). Given the lack of clarity in the record as to the precise timeline of events, and the fact that the Individual Defendants carry the burden at summary judgment to show a lack of genuine issues of material fact, this Court finds that summary judgment is not appropriate in the Individual Defendants favor at this time on Plaintiff's claim for retaliation against them.[5]

D. Qualified Immunity

Based on the foregoing, the remaining claims are Plaintiff's RLUIPA claim and his claims against the Individual Defendants that they retaliated against him and that they violated his free exercise rights related to their denial of his requests for a copy of the Quran while in administrative

---

[5] The Court rejects the Individual Defendants argument that Plaintiff cannot show a "causal connection" because he had the chance to challenge the disciplinary charge. (*See* ECF 26-1 at 23). The Individual Defendants provide no legal support for this theory. Furthermore, it fails to consider that the actual adverse actions at issue relate not only to the filing of the disciplinary charge, which, as indicated above, can constitute an adverse action, but also his placement in administrative segregated housing for at least a period while administrative disciplinary proceedings were ongoing.

segregated housing. The Individual Defendants though next assert they are entitled to qualified immunity. (*See* ECF 26-1 at 23-27).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]" *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (internal citation and quotation marks omitted).

At the outset, this Court notes that Defendants qualified immunity defense does not affect Plaintiff's remaining RLUIPA claim as Plaintiff can only seek injunctive relief under RLUIPA. *See Love v. Does*, No. 17-1036, 2021 WL 2680183, at *10 n.11 (D.N.J. June 29, 2021). With respect to Plaintiff's remaining § 1983 claims against the Individual Defendants under qualified immunity analysis' first prong, the Individual Defendants' argument is solely related to Plaintiff's claims related to the religious classes/programs offered at NJSP. The Individual Defendants make no argument whatsoever regarding qualified immunity's first prong on Plaintiff's remaining retaliation and free exercise claim. Nevertheless, for the reasons discussed above, viewing the facts remaining at issue in the light most favorable to Plaintiff, he has adequately shown that the Individual Defendants' conduct *may* have violated his free exercise and constitutional right to be free from retaliation under the First Amendment.

As to qualified immunity's second prong, the Individual Defendants assert that they are entitled to qualified immunity because "there was no clearly established precedent establishing that their conduct violated the Plaintiff's rights." (*See* ECF 26-1 at 27). Based on this record, this Court disagrees. Retaliating against a plaintiff for filing suit was clearly established. *See Atkinson v. Taylor*, 316 F.3d 269-70 (3d Cir. 2003) (noting that a reasonable prison official would know he violated a prisoner's access to courts right if he retaliates against him for filing a lawsuit). Additionally, the Individual Defendants make no specific argument related to qualified immunity's second prong related to Plaintiff's free exercise claim as to the purported denial of his access to a Quran for at least three months while in administrative segregated housing. Thus, based on this record, the Individual Defendants fail to show that they are entitled to qualified immunity on Plaintiff's remaining retaliation and free exercise claims against them.

E.   Compensatory and Punitive Damages

Finally, Defendants assert they are entitled to summary judgment to the extent that Plaintiff seeks compensatory damages for emotional distress as well as punitive damages on his remaining First Amendment claims.[6] (*See* ECF 26-1 at 27-29). Plaintiff's responsive brief in opposition does not raise any argument with respect to this issue. (*See* ECF 36-1 at 1-8).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) ("Section 1997e(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages."); *Allah v. Al-Hafeez*, 226 F.3d

---

[6] As noted in *supra* note 3, RLUIPA only allows for injunctive relief. Thus, this argument shall only be analyzed with respect to Plaintiff's remaining First Amendment claims.

247, 250–51 (3d Cir. 2000) (affirming dismissal of prisoner plaintiff's claims for compensatory damages for alleged infringements of First Amendment right to free exercise of religion in violation of 42 U.S.C. § 1983 on the basis that said claims were barred by 42 U.S.C. § 1997e(e)). To the extent that Plaintiff is seeking compensatory damages on his remaining retaliation and free exercise claims, and because he has not asserted any physical injury related to these claims, Plaintiff shall not be entitled to pursue compensatory damages on these claims.

Defendants also assert Plaintiff should not be permitted to receive any possible punitive damages since Plaintiff has not adduced any evidence that the Defendants acted with evil motive or intent. (*See* ECF 26-1 at 28). "The purpose of punitive damages is to punish [a] defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Cmty. School Dist. v. Stachura,* 477 U.S. 299, 306 n.9 (1986). "[A] jury may be permitted to assess punitive damages in an action under [section] 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

This Court cannot determine as a matter of law at this stage whether the Defendants acted with the intent or reckless disregard of Plaintiff's First Amendment rights to be free from retaliation and Plaintiff's remaining free exercise claim. This remains a proper question for the jury.[7]

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part. Defendants are entitled to summary judgment on Plaintiff's First Amendment free exercise claims related to his requests for orthodox religious classes based on his Islamic creed but are not entitled

---

[7] Plaintiff may also seek nominal damages on his remaining First Amendment claims.

to summary judgment on Plaintiff's RLUIPA claim involving this issue.  Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim related to his claim that he was denied a copy of the Quran for over three months while in administrative segregated housing.  Plaintiff's First Amendment free exercise claim for being denied a copy of the Quran while in administrative segregated housing as well as his First Amendment retaliation claim against the State of New Jersey and the NJDOC is dismissed with prejudice for failure to state a claim.  The Individual Defendants are not entitled to summary judgment on Plaintiff's First Amendment retaliation claim as well as Plaintiff's claims for being denied access to a Quran while in administrative segregated housing.  However, Plaintiff shall not be permitted seek compensatory damages on these claims. An appropriate order shall be entered.[8]

DATED: November 29th, 2022

GEORGETTE CASTNER
United States District Judge

---

[8] This Court can also not yet decide whether Plaintiff is entitled to the appointment of *pro bono* counsel as he has not yet made a showing of indigency.  Thus, the Clerk will be ordered to send Plaintiff an application to proceed *in forma pauperis* as well as a blank copy of an application for the appointment of *pro bono* counsel.